No. 12292

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

STATE OF MONTANA ex rel. YELLOWSTONE PARK COMPANY,

Relator,

-vs-

THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF
THE STATE OF MONTANA, IN AND FOR THE COUNTY OF MISSOULA, THE
HONORABLE E. GARDNER BROWNLEE, JUDGE PRESIDING,

Respondents.

---

Original Proceedings.

Counsel of Record:

For Appellant:

Gough, Booth, Shanahan and Johnson, Helena, Montana.
Cordell Johnson, Helena, Montana, argued.

For Respondent:

Tipp, Hoven and Brault, Missoula, Montana.
Vernon Hoven argued, Missoula, Montana.

---

Submitted: June 16, 1972
Decided: OCT 1 8 1972

Filed: OCT 1 8 1972

Thomas J. Kearney
Clerk

PER CURIAM:

Relator, Yellowstone Park Company, applied to this Court for a writ of supervisory control or other appropriate order granting relief from the order of the district court of the fourth judicial district, county of Missoula, dated May 25, 1972, wherein the district court granted plaintiffs' motion for summary judgment on the issue of liability. This Court issued an order to show cause on June 5, 1972. Briefs were submitted and oral argument had.

Relator Yellowstone Park Company is the defendant in two separate civil actions consolidated for trial in the district court. The district court cases are: "Handee Foods, Inc., Plaintiff v. Yellowstone Park Company, Defendant", Cause No. 35336; and "National Business Factors, Inc., Plaintiff v. Yellowstone Park Company, Defendant", Cause No. 35799.

Plaintiffs filed a motion for summary judgment which was heard by the district court on May 25, 1972. On the same date, the district court entered its order granting summary judgment in part on the question of liability in both cases.

From the pretrial order, the agreed statement of fact reads:

"Handee Foods, Inc. is a business located in Missoula, Montana, represented by Mr. F. W. Krieger, General Manager and President of the Company. It is a distributor of so-called 'convenience foods', which are foods that have been pre-cooked, refrigerated, and kept in a refrigerated condition until such time as·they are 're-constituted' or cooked for service to a customer. It does not sell to the general public, but sells to institutions, restaurants, and in general, the wholesale and

retail market. Handee Foods has 'O degree' storage facilities, located in Livingston, Montana, that are capable of handling large supplies of frozen food products over extended periods of time.

"H. Shenson, Inc. is a corporation located in San Francisco, California, and is a meat purveyor, that sells generally to the retail market, institutions, restaurants, and similar situated businesses. It likewise 'breaks' or 'cuts up' meats, refrigerates the same, and offers them to its prospective customers. In the cause now before the Court, H. Shenson, Inc. is represented by Mr. Bud Murphy, Sales Manager for that company. National Business Factors, Inc., plaintiff herein, is the owner and holder of the account of H. Shenson, Inc., by virtue of an assignment made to it by H. Shenson, Inc.

"Yellowstone Park Company is a corporation which operates as a concessionaire under a concession agreement it has with the United States Department of Interior, National Park Service. Its activities in Yellowstone National Park include the owning and operating of several different hotels and restaurants which provide food and beverage service to the traveling public.

"The business of Yellowstone Park Company is highly seasonal with the primary concentration of visitors to the Park being in the months of June, July and August of each year. Yellowstone Park Company is represented in this matter by Mr. R.L. Boyd, its Vice President and Controller, Mr. Peter Rogers who was the Food and Beverage Director for Yellowstone Park Company in 1969 and 1970, and Mr. Percy Butler, who is the Executive Chef for Yellowstone Park Company."

According to the pretrial order, plaintiffs contend:

1. That Yellowstone Park Company was to use all of the products ordered from Shenson, Inc. and Handee Foods, Inc., during the Yellowstone Park season of 1970, or to pay for such products as were not used.

2. That the total amount of the products for which Yellowstone Park Company is obligated to pay, is to Shenson Meats the sum of $4,119.12, and Handee Foods, Inc., in the sum of $36,621.52.

3. That Handee Foods, Inc., in addition to the price of the goods as represented by the account, is entitled to the cost of storage at the Livingston warehouse, at the rate of $600 per month from October 1, 1970, to date.

According to the pretrial order, defendant contends:

1. That under the terms of the agreement between Yellowstone Park Company and Handee Foods, Yellowstone Park Company issued its purchase orders for estimated approximate usages for the 1970 season and Yellowstone Park Company was obligated to pay for and did pay for only those items that were ordered specifically for delivery and delivered to Yellowstone Park Company in Yellowstone National Park; and that the total price of the goods so delivered under the terms of the agreement was $630,711.73, and that the exact same amount, $630,711.73, was paid by Yellowstone Park Company to Handee Foods, Inc.

2. That it was the intent of the parties to the agreement that Handee Foods, Inc. would be responsible for any oversupply of food products left on hand in the Handee Foods warehouse in Livingston at the end of the 1970 season.

3. That Yellowstone Park Company has paid for all of the goods delivered to it by Handee Foods, Inc. and Yellowstone Park Company does not owe Handee Foods, Inc. $36,621.52 or any other amount.

4. That, in connection with the claim of H. Shenson, Inc., Yellowstone Park Company has paid for all of the goods delivered directly from H. Shenson, Inc. to Yellowstone Park Company and Yellowstone Park Company does not owe H. Shenson, Inc. or National Business Factors, its assignee, the sum of $4,119.12 or any other amount.

5. That, under no circumstances, and particularly under the circumstances that exist in this case, would Handee Foods be entitled to any amount of damages representing storage costs incurred by Handee Foods, Inc. at the warehouse it rented in Livingston.

Subsequently, plaintiffs moved for summary judgment and the district court issued an order granting summary judgment on the question of liability. That order states in part:

"On December 9, 1969 the Defendant wrote a letter to the Plaintiff. Plaintiff contends the letter is a writing expressing the agreement between the parties. Determination of that point before the trial is very necessary. If the writing contains the agreement of the parties, and if the Court can determine from the writing who is the actual owner of the food items that remained in the warehouse at the end of the 1970 season, then the question of liability is settled and no parol evidence would be permitted to show any other oral agreement.

"In the opinion of the Court the letter does settle the question of liability and therefore parol evidence would not be admissible to vary any of its terms. The letter was written by the Defendant and must be interpreted as provided in Chapter 7, of Title 13, RCM 1947, and as provided in 13-720, the words are to be interpreted most strongly against the party who put them in the writing."

The letter referred to in the court's order reads:

"Mr. Fritz Krieger
"Handee Foods Incorporated
"802 Milton
"Missoula, Montana  59801

"Dear Fritz:

"So that we keep up to date with each others progress, we are still going ahead as scheduled on converting our food program to total convenience. We are in the process

- 5 -

this month of preparing our purchase orders for convenience equipment totaling some $144,000.00. This equipment includes Thermotainers, Vischer Steamers, Convection Ovens and additional freezers. John King, Plans and Projects Officer and I have spent this past month deciding what brands of equipment we want to buy and we recently returned from the New York Hotel Show, at which time some of our questions were answered, as to the brand of equipment.

"At the same time, I am concerned about the progress you are making, as we are counting on you handling our entire convenience food products, which will be coming from basically three purveyors and in addition, seven small purveyors. I want to make sure your warehouse deal is firm and that you are ready to proceed to remodel the existing building. There is going to be a huge volume and I want to make sure you have ample receiving, proper tight control systems and that you are going to have the equipment to distribute the product throughout the Park. Nothing has changed relative to night deliveries at four area warehouses throughout the Park.

"I have made up the new menus and I am putting them into final form for approval of prices to the Government and it is estimated that we will be purchasing through you, some $650,000.00 to $850,000.00 worth of product. Almost all of this product, totaling close to 100 items will be set for delivery between April 1 and 15 to your facilities in Livingston. As we have previously discussed, you will receive 20% over and above the cost of the merchandise, to receive, to warehouse and to distribute these products to us. 20% will be added to the case price on each item.

"On the big three distributors, I have made, or am in the process of concluding arrangements whereby you will be able to pay these bills in three installments- June, July and August, even though the product will have been delivered in April. However, such an arrangement is not possibly where manufacturers are supplying only one item, such as our bacon Allentown, Pennsylvania; and our sausage from Memphis, Tennessee; and our stuffed baked potato from Milwaukee.

"These are just examples of our one-item houses, whereby the truck load will have to be paid for by you after delivery, even though we do not consume the product in its entirety until October.

"In the near future, I will give you a list of all the purveyors and their products; the packing specs with the price that you will pay to them and the price that we will pay you which will, of course, include 20% on top of the factory price.

"Please keep me advised as to your progress, so that I am assured you will be in the position of handling our food program for next year and succeeding years.

                                        "Sincerely,

                              S/ " Peter
                                 "Peter Rogers
                                 "Food & Beverage Director."

The issue before this Court is not confined solely to the question of whether there remains a genuine issue of material fact concerning the oversupply of food in the Handee warehouse at the close of the 1970 season but, rather, was the evidence in the record produced through discovery that creates this issue properly excluded by the trial court. This evidence includes parol evidence by Peter Rogers, on behalf of defendant, that directly disputes any inferences in the heretofore quoted letter of December 9, 1969, that defendant would be responsible for oversupply; evidence of the course of conduct contained in defendants exhibits "F" and "G" to be construed with the letter; and also evidence of "customs of the Trade". This applies to Cause 35336, Handee Foods. In Cause 35799, National Business Factors, it appears that all items sold directly to defendant were paid for and the dispute concerns items handled through Handee, and the ultimate issue in this cause would be the same as that of Cause 35336.

The letter upon which the district court based its determination does not speak directly to the issue of oversupply at the close of the 1970 season. Any determination must be had from the general language contained in the letter as a whole, as was demonstrated by the district court. We hold the language to be ambiguous and subject to additional clarification as to the true intent of the parties under the appropriate sections of the Montana Uniform Commercial Code, Title 87A, R.C.M. 1947, and more particularly sections 87A-2-101, et.seq., R.C.M. 1947.

Section 87A-2-202, R.C.M. 1947, provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.

"(a) by course of dealing or usage of trade (section 87A-1-205) or by a course of per-

- 7 -

formance (section 87A-2-208); and

"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." (Emphasis supplied).

In the comment which follows Section 2-202, Uniform Commercial Code, Uniform Laws Annotated, it is pointed out that there are no prior uniform statutory provisions under previous uniform codes. The comment then goes on to point out that the purpose of Section 2-202, is to definitely reject:

"(a) Any assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon;

"(b) The premise that the language used has the meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the commercial context in which it was used; and

"(c) The requirement that a condition precedent to the admissibility of the type of evidence specified in paragraph (a) is an original determination by the court that the language used is ambiguous."

Paragraph (a) of section 87A-2-202, R.C.M. 1947, makes admissible, evidence of course of dealing, usage of trade and course of performance to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached. Further, the course of actual performance by the parties is considered the best indication of what they intended the writing to mean. See: Hunt Foods & Industries, Inc. v. Doliner, 270 N.Y.S.2d 937; Michael Schiavone & Sons, Inc. v. Securalloy Company, Inc., (D.C.Conn. 1970), 312 F.Supp. 801.

The judgment of the trial court is reversed and the cause remanded to the district court for trial in conformity with this opinion.